## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

FREDDIE W. MANWARRING,   )
   )
   )
       **Plaintiff,**   )
   )
v.   )      **Case No.  05-CV-127-PJC**
   )
**JO ANNE B. BARNHART,**   )
**Commissioner of the Social**   )
**Security Administration,**   )
   )
       **Defendant.**   )

### ORDER

Claimant Freddie W. Manwarring ("Manwarring"), pursuant to 42 U.S.C. § 405(g),

requests judicial review of the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his application for supplemental security income and

disability insurance benefits under the Social Security Act.  In accordance with 28 U.S.C. §

636©)(1) and ©)(3), the parties have consented to proceed before a United States Magistrate

Judge and any appeal of this Order will be directly to the Tenth Circuit Court of Appeals.

Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the

Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.

For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Claimant's Background

Manwarring was born on September 20, 1960 which made him forty-two years old at the

time of the hearing.  (R. 44).  He is single, has a twenty-one year old child, lives with his mother,

and has an eleventh grade education.  (R. 44-45).  Claimant has formerly worked as a shop

helper, crane operator, appliance repairer, and explosives assembler.[1]  (R. 45-47).

Manwarring alleges he became unable to work on July 12, 1999 due to back pain, neck pain, and severe headaches.  (R. 159).   At the hearing, Manwarring testified that he also has pain in his left leg and elbow, numbness in his left hand and shoulder, pain in his hips, blurred vision from migraine headaches, and difficulty walking.  (R. 49-55, 59, 60).  He also testified that he has been prescribed Lortab and Tylox; however, he does not take the medications because they upset his stomach and liver, and cause memory loss.  (R. 50, 55).

By way of background, in 1990 Claimant hurt his back and was granted disability insurance benefits for several years.  (R. 140, 142, 154, 207).  His disability insurance was terminated and he returned to work.  (R. 124).

On July 12, 1999, Manwarring was treated at the emergency room at St. John Medical Center for contusions and strains of the neck and back resulting from a fall at work while lifting a washer and dryer.  (R. 185).  At the hospital, Claimant complained of neck, back, and head pain, dizziness and double vision.  *Id.*  X-rays of his neck and back were normal except for evidence of "[b]ilateral spondylolysis at L5 level with Grade I spondylolisthesis of L5 on S1" which was "likely chronic . . . [because of] [n]o acute abnormality . . . ."  (R. 186).  A magnetic resonance imaging test ("MRI") also demonstrated a "[b]ilateral spondylolysis at L5 with Grade I spondylolisthesis of L5 on S1," as well as "degenerative disc disease and disc dehydration and a mild bulge at L5-S1 but no evidence of disc herniation or protrusion or spinal stenosis."  (R. 189).  A CT scan of his brain was normal.  (R. 188).

---

[1]      At the December 12, 2002 hearing, Manwarring testified that he was 6'1" and weighed 285 pounds.  (R. 45).

During follow-up visits in July through August, 1999,  Jack H. Brown, M.D., treated Manwarring for a corneal abrasion and neck and back pain.[2]  (R. 217-19).  Dr. Brown prescribed Lortab for Claimant's pain and referred him for physical therapy, which Manwarring stated he underwent one to three times a week for several months.  (R. 207, 215-19, 191-93).

As a result of the July 12th accident, Manwarring was examined by Griffith C. Miller, M.D., on September 14, 1999 for purposes of workers' compensation benefits.  (R. 194). Manwarring complained to Dr. Miller of pain in his left leg, upper back, head and neck and decreased range of motion of the neck as well as frequent headaches.  (R. 195).  Dr. Miller noted "a lot of muscle spasm and pain" with limited flexion and extension in Manwarring's neck,  and pain and limited range of motion in Manwarring's back and spine.[3]  (R. 195).  Dr. Miller stated that Claimant should continue under Dr. Brown's care and receive physical therapy, but that he needed to have his lower back evaluated by an orthopedic surgeon to determine whether surgical intervention were required.  *Id.*

Manwarring was also examined by William R. Gillock, M.D., M.P.H., on December 7, 1999, as a result of his workers' compensation claim.  (R. 206-13).  Dr. Gillock reported that Manwarring complained of migraine headaches which resulted in blurred vision during the headache, lower back and neck pain, and intermittent numbness over the back of his left thigh. (R. 207-08).  He noted reduced range of motion in Claimant's lumbosacral and cervical spine.

---

[2]     According to Dr. Brown's records, he had previously examined Manwarring on December 7, 1993 for lower back pain.  At that time, Dr. Brown prescribed Lortab and Prozac and noted that Claimant's back was causing pain intermittently. (R. 222).

[3]     There is obviously a transcription error in Dr. Miller's report as it incorrectly states that the July 12, 1999 MRI showed that Manwarring had "spina bifida" of his low back.  (R. 194).  As noted above, the MRI showed "[b]ilateral spondylolysis at L5 with Grade I spondylolisthesis of L5 of S1." (R. 189).

3

(R. 209-10).  Based on his physical examination and review of a physical therapy report as well as the x-rays and the MRI from Manwarring's July 12th hospitalization, Dr. Gillock stated that Manwarring did not require any additional conservative treatment, but that he "may be a candidate for surgical treatment i[f] he were interested."  (R. 211).  He opined that Manwarring had no permanent partial impairment to his head, cervical spin, arms and legs, but had a 5% permanent partial impairment to his lumbar spine with 50% of that impairment resulting from his prior injury and 50% resulting from the July 12th aggravation of the prior injury.  (R. 212).  He also found that Manwarring's spondylolisthesis was a pre-existing condition.  *Id*.

On June 31, 2000, Manwarring returned to Dr. Brown, complaining of skin tags on his neck and chronic low back pain.  (R. 214-15).  Dr. Brown again prescribed Lortab for the low back pain.  *Id*.

On December 11, 2000, Manwarring was treated at the emergency room at Hillcrest Medical Center for a head contusion, blurred vision and short-term memory loss resulting from a slip and fall on the ice.  (R. 223-34).  While at Hillcrest, a CT scan was performed which was normal and Manwarring was released to the care of his primary care physician, Dr. Brown.  (R. 229).

Subsequent to the administrative hearing, Manwarring submitted additional medical records which were reviewed by the Appeals Council: a diagnosis of hepatitis[4] by Michael Davis, D.O., at St. Francis Hospital at Broken Arrow and prescriptions for Vistaril for nausea, and  Imitrex for migraine headaches.  (R. 8-12, 236-40).

---

4       According to the medical report, further testing was required to determine the form of hepatitis. (R. 236).

4

### Procedural History

On January 16, 2001, Manwarring applied for disability insurance benefits under Title II, 42 U.S.C. § 401 *et seq*., and for supplemental security income benefits under Title XVI, 42 U.S.C. § 1381 *et seq*., which were denied in their entirety both initially and upon reconsideration.  (R. 72-73, 111-13).[5]  A hearing before ALJ Richard J. Kallsnick was held on December 12, 2002.  (R. 37-70).  By decision dated February 10, 2003, the ALJ found that claimant was not disabled at anytime through the date of the decision.  (R. 21-31).  On October 29, 2004, the Appeals Council denied review of the ALJ's findings.  (R. 8-12).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Social Security Law and the Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

---

[5]     Manwarring initially filed applications for benefits on August 24, 1999 which were denied on November 19, 1999 and not pursued. (R. 71, 107-09).  Pursuant to 20 C.F.R. §§ 404.988 and 416.1488, an application for benefits may be reopened within four years upon a finding of good cause, or within one year for any reason.  The ALJ found no good cause existed to reopen the case and therefore *res judicata* barred consideration of Manwarring's current application prior to November 19, 1999. (R. 24-25).  The ALJ concluded that the relevant time period for purposes of determining Manwarring's entitlement to disability insurance and SSI benefits, therefore, was November 19, 1999 through February 10, 2003, the date of the decision. *Id*.

Social Security regulations implement a five-step sequential process to evaluate a

disability claim.[6]  20 C.F.R. §§ 404.1520, 416.920.  Judicial review of the Commissioner's

determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two

inquiries: first, whether the decision was supported by substantial evidence; and, second,

whether the correct legal standards were applied.  *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th

Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to

support a conclusion."  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (citation omitted).

In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor

substitute [its] judgment for that of the agency."  *Id.* (citation omitted).  Nevertheless, the court

examines "the record as a whole, including whatever in the record fairly detracts from the weight

of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test

has been met."  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir.

1991).

---

[6]     Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as
        defined by 20 C.F.R. §§ 404.1510, 416.972.  Step Two requires that the claimant establish that he
        has a medically severe impairment or combination of impairments that significantly limit his ability
        to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is engaged
        in substantial gainful activity, Step One, or if the claimant's impairment is not medically severe, Step
        Two, disability benefits are denied.  At Step Three, the claimant's impairment is compared with
        certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  A claimant suffering from a listed
        impairment or impairments "medically equivalent" to a listed impairment is determined to be
        disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant
        must establish that he does not retain the residual functional capacity to perform his past relevant
        work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish
        at Step Five that work exists in significant numbers in the national economy which the claimant,
        taking into account his age, education, work experience, and RFC, can perform.  *See Dikeman v.
        Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner
        shows that the impairment which precluded the performance of past relevant work does not preclude
        alternative work.  20 C.F.R. §§ 404.1520, 416.920.

**The Decision of the Administrative Law Judge**

The ALJ found that Manwarring's spondylolysis of L-5 on S-1 and degenerative disc disease were severe impairments, but that they did not individually or in combination meet or medically equal a listing, particularly Listing 1.04. (R. 26). The ALJ held that Manwarring had the RFC to perform light work which involved lifting or carrying no more than twenty pounds occasionally and ten pounds frequently and only occasional stooping, bending, crouching, climbing, or crawling. (R. 28, 30). Based upon the RFC, the ALJ concluded that Manwarring could not perform his past relevant work, although he could perform the duties of light and sedentary jobs, including a sewing machine operator, toll booth attendant, self-service gas station cashier, arcade attendant, assembler and laborer. (R. 29, 31). Thus, the ALJ concluded that Manwarring was not disabled under the Social Security Act at any time through the date of the decision.

**Review**

Manwarring contends that the ALJ erred in (1) not providing him a proper waiver opportunity; (2) failing to develop the record; (3) failing to perform a proper evaluation at Steps Two, Three and Five; and (3) failing to perform a proper credibility determination.

**(A)    Waiver of Right to Representation**

Manwarring argues that the ALJ did not provide Claimant a proper opportunity to waive his right to counsel. He states that he attended the hearing with the intention of seeking a postponement so that he could obtain counsel and was "bullied" by the ALJ into proceeding. He contends that the ALJ should have advised him that he could retain an attorney on a contingency fee basis and that the fee would be capped at 25% of past-due benefits, citing *Binion v. Shalala*,

13 F.3d 243, 245 (7th Cir. 1993) (to insure a valid waiver of counsel, the ALJ should explain

"(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free

counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of

past due benefits and required court approval of the fees").

Unlike the Seventh Circuit's more stringent requirements for waiver of counsel, the

Tenth Circuit in *Carter v. Chater*, 73 F.3d 1019 (10th Cir. 1996), held that the claimant was

provided sufficient notice of her right to counsel, to effect a valid waiver, when the claimant was

advised of her right to counsel in the notice of hearing, the notice of denial, and the notice of

reconsideration, and by the ALJ once orally prior to the hearing.  *Carter v. Chater*, 73 F.3d 1019,

1021 (10th Cir. 1996).  Further, the circuit court stated that "[w]hile the customary and better

practice would seem to be to place both the advisement and the waiver on the record during the

hearing, neither the pertinent statute, *see* 42 U.S.C. § 406©), nor the regulations, *see* 20 C.F.R. §

404.1706, nor our previous cases require any more advisement than was given in this case."  *Id.*

(citing *Garcia v. Califano*, 625 F.2d 354, 356 (10th Cir. 1980)).

Here, Manwarring was notified of his right to counsel numerous times through written

correspondence with the Social Security Administration ("SSA") and on the record by the ALJ at

the hearing.  In the notice of denial of benefits decision initially and on reconsideration, the SSA

advised Manwarring of his right to assistance on appeal of the decision, the availability of

representation by a lawyer on a contingency fee basis, the limit of such fees to 25% of any past

due benefits and the oversight of the court:

> You can have a friend, lawyer or someone else help you.  There are groups that
> can help you find a lawyer or give you free legal services if you qualify.  There
> are also lawyers who do not charge unless you win your appeal.  Your local
> Social Security Office has a list of groups that can help you with your appeal.

> If you get someone to help you, you should let us know.  If you hire someone, we
> must approve the fee before he or she can collect it.  And if you hire a lawyer, we
> will withhold up to 25 percent of any past due benefits to pay toward the fee.

(R. 79, 84).  Further, the "Request For Hearing" form signed by Manwarring advises: "You have

a right to be represented at the hearing.  If you are not represented but would like to be, your

Social Security Office will give you a list of legal referral and service organizations."  (R. 86).

Manwarring checked box no. 12 on the form request which states that "Claimant not represented

- list of legal referral and service organizations provided."  *Id*.  Manwarring does not contest that

the information was provided.  Manwarring was also provided notice of his right to counsel in

the Notices of Hearing dated August 30, 2002 (R. 88-91) and October 24, 2002 (R. 94-97).[7]

Contrary to Manwarring's argument that the ALJ "bullied" him into proceeding, the

transcript reflects that the ALJ agreed to give Manwarring another postponement at which point

Manwarring stated that he wished to proceed.  (R. 39-40).  After that exchange, the ALJ again

verified that Manwarring was aware of his right to counsel and that the hearing could be

postponed to allow Manwarring another opportunity to retain counsel, but Manwarring again

stated he wanted the hearing to proceed:

> ALJ:    . . . Now we talked about this on the record just a few moments ago, but I
> want to make sure I'm perfectly clear.  You had wanted – postponed to get
> a representative.  You're present today.  You're not represented.  That's
> fine with me.  It doesn't matter to me.  If you want to proceed without a
> representative, that's fine.  If you want me to postpone the case to allow
> you to obtain a representative, I will grant you a postponement.  In the
> event that you can't afford to hire one, they have legal services and other
> agencies that can represent you at no cost to you.  What do you wish to
> do?
>
> CLMT: I wish just to proceed today.

---

[7]     The ALJ rescheduled the first hearing because Manwarring wanted counsel present, yet Claimant had
not retained counsel by the time of the rescheduled hearing.  (R. 39).

ALJ:    Very well, then.   We'll go ahead then with your hearing.

(R. 41).  Thus, unlike the situation in *Carter*, both the advisement and the waiver were placed on

the record at the hearing.

Based on the above facts and the applicable Tenth Circuit law, the Court finds that

Manwarring was sufficiently informed of his right to counsel and knowingly and voluntarily

waived that right.

**(B)    Duty to Develop the Record and Step Two**

Manwarring also argues that given the fact that he was unrepresented, the ALJ failed to

fully and fairly develop the record by not requisitioning all of Manwarring's pharmaceutical

records, and by not ordering a consultative examination.  The Court finds no error.

First, the Court notes that the ALJ repeatedly asked Claimant if he had any other

evidence or medical records that were not within his file.  (R. 41-42, 43-44, 68-69).  For

instance, the ALJ asked: "You had a chance to look at your file.  Didn't you?" and Claimant

responded "Yes, sir." (R. 41).  The ALJ then asked: "Do you know of any records that we might

need?  Have you had any recent hospitalizations or any recent treatments that we don't have in

the file?" and claimant stated "No, sir."  (R. 43).  Thus, the ALJ asked "So we have everything"

and the Claimant responded "I believe you have everything."  *Id*.  Claimant was also asked

several times if he had viewed his file, which he said he had, and he was also given the

opportunity to view it again if he so desired.  (R. 43, 68-69).

Manwarring cites his statement in his Disability Report of August 17, 1999 as evidence

that the ALJ failed his duty to develop the record by not requesting Manwarring's records from

his pharmacist. (R. 140).  Manwarring's one remark in August 1999 that he did not have all of

his "medicine papers" from his pharmacist does not trigger further development of the record as the medical records obtained from the physicians who prescribed the medications are in the record and adequately identify the medications prescribed.

Manwarring also contends that the ALJ "prejudiced" his case by not ordering a consultative examination after learning of Claimant's neck pain, left shoulder, arm and hand complaints, head traumas and headaches with memory loss.  He claims to have met his burden of showing that each of these conditions are severe impairments and contends that the ALJ also erred in ignoring them at Step Two of the evaluative process.

"The Secretary has broad latitude in ordering a consultative examination." *Diaz v. Sec'y of Health and Human Servs*., 898 F.2d 774, 778 (10th Cir. 1990).  An ALJ should seek a consultative examination when there is "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citing *Diaz*, 898 F.2d at 777).

> Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

*Hawkins*, 113 F.3d at 1167.

At Step Two of the sequential evaluation process, the claimant must establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  An impairment giving rise to disability benefits is defined as one which "results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Therefore, "[t]he step two severity determination is based on medical factors alone . . . ."  *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).  Although the claimant need only a *de minimus* showing of an impairment at Step Two, he must show "more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Manwarring contends that the ALJ ignored his neck pain, left shoulder, arm and hand complaints, head traumas and headaches with concomitant blurred vision in his Step Two analysis.  The Court finds that the ALJ considered these complaints although he ultimately determined that Manwarring's only severe impairments were spondylolysis of L-5 on S-1 and degenerative disc disease.  The ALJ acknowledged that Manwarring also complained of pain in his neck and down his left leg, that Manwarring alleged that he had no feeling in his left hand as a result of his fall on the ice on December 11, 2000, and that he suffered from headaches.  The ALJ, however, noted that an x-ray of Claimant's cervical spine performed on July 12, 1999 was normal; a CT scan of his head performed after Manwarring's fall on the ice was normal; there was no mention of left hand numbness in the medical records; Manwarring had not seen a doctor in a year before the hearing and took no medication other than Tylenol; and although he did complain of a headache after falling on the ice, his complaints of headaches were otherwise "barely mentioned in the medical record."  (R. 27-28, 186, 229).

The Court further finds that the ALJ did not err in making this determination at Step Two; nor did he err in failing to develop the record concerning these other alleged impairments. Manwarring has failed to establish that these other complaints were "severe" impairments.

Although Manwarring did complain of headaches to the physical therapist (R. 191), and to Drs.

Miller and Gillock during their workers' compensation examinations after his July 1999 injury

(R. 195, 207), the record shows that from the alleged onset date of July 12, 1999 through

December 12, 2002, the date of the hearing, Manwarring sought treatment only twice for

headaches: in a follow-up visit with Dr. Brown on July 30, 1999 after his initial back injury (R.

219) and in the emergency room visit after his fall on the ice in December 2000 (R. 227).

Further, as the ALJ noted, Manwarring testified that he only took Tylenol for his

headaches as he could not take Tylox or Lortab due to stomach problems and memory loss.  (R.

55).  Although Manwarring submitted a prescription for Imitrex as an exhibit before the Appeals

Council, the Imitrex was prescribed nineteen months after the hearing.  (R. 240).  Concerning the

neck pain, x-rays were performed on July 12, 1999 and no trauma was noted within his cervical

spine.  (R. 186).  Moreover, Claimant stated that he has blurred vision only when suffering from

a migraine headache which he has three to six times a month.  (R. 48-49).  On both July 12, 1999

and December 11, 2000 a CT scan was performed upon Manwarring's head, and neither scan

revealed anything unusual.  (R. 188, 229).  Finally, there is no evidence "demonstrable by

medically acceptable clinical and laboratory diagnostic techniques" which establishes any

impairment based on Manwarring's left shoulder, arm and hand complaints.  42 U.S.C. §

423(d)(3).  Thus, Manwarring has not shown that a consultative examination would have

resolved any issue of impairment concerning these other medical complaints.  In other words, he

has not met his burden of providing sufficient evidence to suggest a "reasonable possibility that a

severe impairment" resulting from these other alleged complaints exists.  *Hawkins*, 113 F.3d at

1167.  Accordingly, the Court finds no error at Step Two or in failing to develop the record.

**(C)    Step Three**

At Step Three of the sequential evaluation process, a claimant's impairment is compared

to the Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the impairment is equal or medically

equivalent to an impairment in the listings, the claimant is presumed disabled.  A plaintiff has the

burden of proving that a listing has been equaled or met.  *Williams v. Bowen*, 844 F.2d 748, 750-

51 (10th Cir. 1988).  The ALJ is "required to discuss the evidence and explain why he found that

[the claimant] was not disabled at step three."  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.

1996) (The ALJ failed to explain why the claimant was not disabled and did not even mention a

listing considered; he merely stated that the claimant did not meet any listings.).

Manwarring asserts that the ALJ did not properly evaluate whether his severe

impairments of spondylolysis of L5 on S1 and degenerative disc disease met or equaled a listing.

Manwarring contends that the ALJ's Step Three evaluation was impermissibly conclusory and

beyond judicial review, citing *Clifton*.  The Court disagrees.

Unlike the ALJ's decision in *Clifton*, the ALJ in this case expressly noted that he

considered a specific listing, *i.e.*, "[s]pecific emphasis has been given to Listing 1.04."  (R. 26).

Further, he considered and analyzed all the medical evidence in the record, noting the lack of

disc herniation or spinal stenosis and the lack of significant findings on physical examination.

(R. 27).  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) ("*Clifton* does not

remotely suggest that findings at other steps of an ALJ's analysis may *never* obviate the lack of

detailed findings at step three.") (emphasis in original).  Moreover, the ALJ also stated that in

addition to the medical evidence, he considered all "statements in the record, and the testimony

received at the hearing to determine what impairment or combination of impairments interfere

with claimant's normal physical and mental functioning." (R. 25). The Court concludes that the

ALJ properly evaluated Claimant's severe impairments at Step Three.

**(D)      Credibility Determination**

The Court gives great deference to the credibility determination of the ALJ. *Fowler v.*

*Bowen*, 876 F.2d 1451, 1455 (10th Cir. 1989). The Court "'will not upset such determinations

when supported by substantial evidence.'" *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995)

(quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). When determining credibility,

the ALJ is to set forth "specific reasons for the finding on credibility, supported by the evidence

in the case record." SSR 96-7; *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (finding that

the ALJ's conclusory credibility determination required the Court "to speculate what specific

evidence led the ALJ to find claimant's pain was not disabling."). If the ALJ sets forth the

specific evidence on which he relies in evaluating a claimant's credibility, he does not have to

recite the evidence factor by factor. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002);

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Manwarring contends that the ALJ performed an improper credibility determination in

using boilerplate language and in failing to link his findings to substantial evidence. However,

the Court finds that the ALJ provided specific explanations for his findings and there is

substantial evidence supporting the ALJ's conclusion that Claimant was not fully credible. The

ALJ did not just use boilerplate language. Rather, he discussed at length the evidence which he

relied upon in discounting Claimant's credibility including (1) the lack of objective medical

evidence; (2) the lack of any functional limitations placed on Claimant by his physicians which

would preclude him from engaging in light work; (3) that Manwarring earned more in 2001 than

15

he had since 1997 and that he was able to perform household chores and go for walks; and (4)

that he did not seek treatment for his pain and took no prescription medication other than

Tylenol.  (R. 27-28).   The ALJ's discussion was adequate, and he considered appropriate

factors; therefore, there was no error.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000).

**(E)     Step Five**

Last, Manwarring claims that the ALJ failed to perform a proper evaluation at Step Five

of the sequential evaluation process.  Specifically, Claimant argues that since the ALJ's Step

Two and Step Three determinations were incorrect, the hypothetical posed to the vocational

expert ("VE") was incomplete.  As stated above, the ALJ's Step Two and Three determinations

were legally correct: therefore, the ALJ did not provide incomplete information to the VE.  The

ALJ included in the hypothetical those limitations he found were supported by the record.  *Evans*

*v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

Manwarring also takes issue with the jobs the VE identified that he could perform.  He

argues that he cannot perform a job as a sewing machine operator as it requires greater

vocational preparation than those of unskilled jobs.  He also contends that none of the laborer

jobs in the Dictionary of Occupational Titles involves sedentary work as claimed by the VE.[8]

Assuming without deciding the validity of these objections and removing laborer and sewing

machine operator from the list of possible jobs, the ALJ has still identified a significant number

of other jobs existing in the national economy which Manwarring could perform given his age,

education, work experience and RFC: that is, toll booth attendant, self-service gas station

---

[8]     The Commissioner states that the VE identified "miscellaneous labor jobs, like masking off . . . parts or polishing items."  (R. 65).

cashier, arcade attendant, and assembler.  Manwarring, however, contends that these remaining light and sedentary jobs require frequent reaching, handling and fingering and he "may not have the manual dexterity to perform" these jobs.  The ALJ is only required to identify impairments which are established within the record.  *See generally Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991); *see also Chuculate v. Barnhart*, 2006 WL 637163 at *3 (10th Cir. 2006) ("The limitations plaintiff asserts, however, must be supported by the medical evidence or the ALJ should not include them in a hypothetical question.").  Manwarring has cited no support in the record limiting his manual dexterity.  Thus, the Claimant has established no basis for precluding work as a toll booth attendant, self-service gas station cashier, arcade attendant, and assembler. The Court finds that the ALJ performed a proper evaluation at Step Five.

## Conclusion

For the reasons stated above, the Court concludes that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  The decision is, therefore, AFFIRMED.

DATED this 11th day of April, 2006.


Paul J. Cleary
United States Magistrate Judge

17